THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 20-69233-jrs |
| JASON CHRISTIAN WHISENTON, | CHAPTER 7 |
| Debtor. | JUDGE JAMES R. SACCA |
| HAVENBROOK HOMES, LLC, AS AGENT FOR FYR SFR BORROWER, LLC, <br> Movant, <br><br> vs. <br><br> JASON CHRISTIAN WHISENTON, <br> Debtor, <br><br> S. GREGORY HAYS, <br> Trustee, <br> Respondents. | CONTESTED MATTER |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

**COMES NOW**, HAVENBROOK HOMES, LLC, AS AGENT FOR FYR SFR BORROWER, LLC, ("Movant") and hereby moves this Court for relief from the automatic stay pursuant to 11 U.S.C. § 362(d), with respect to certain real property. In support thereof, Movant shows as follows:

1.

JASON CHRISTIAN WHISENTON ("Debtor") having filed a voluntary petition pursuant to 11 U.S.C. § 701, *et seq.*, is subject to the jurisdiction of this Court.

2.

This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362.

3.

Movant holds a claim against Debtor due to default for failure to pay rent under a residential lease agreement entered into on or about November 11, 2019 ("Lease") concerning residential property located at 1218 Campbellton Road SW, #B, Atlanta, Georgia 30310 ("Property").

4.

The Property is listed as Debtor's address in the Petition [Doc. 1, p. 2].

5.

Movant seeks relief in order to initiate and continue dispossessory proceedings ("Dispossessory") in Fulton County, Georgia to dispossess Debtor along with any other occupants from the Property for failure to pay rent under the Lease. A copy of the Lease is attached hereto as **Exhibit 1**.

6.

Monthly rent under the Lease is $969.00 per month ("Rent").  In the event Rent is not received by the fifth (5th) day of each month, a late fee of $96.90 is incurred ("Late Fee").

7.

Debtor defaulted under the terms of the Lease by failing to pay Rent, Late Fees, and other applicable charges under the Lease as required for May 2020 through the date of the instant motion. As of the date of the instant motion, Debtor owes a total of $7,357.50.  Debtor continues to accrue arrearages of Rent, Late Fees, and other applicable charges.

8.

Debtor has caused Movant undue hardship. Movant is unable to initiate and continue with the Dispossessory and exercise its state law remedies due to the automatic stay and has incurred costly attorney fees as a result of Debtor's actions and filings.

9.

Because Debtor has demonstrated a continuing default and a clear inability to make payments required under the Lease and has not submitted any documentation to the contrary under the provisions of the bankruptcy code, Movant is not adequately protected. For the foregoing reasons, Movant asserts that cause exists sufficient to waive the requirements of Bankruptcy Rule 4001(a)(3).

10.

Because there is no equitable or legal interest in the Property which could benefit the Estate and such property is not part of the Estate, the Trustee's interest should be deemed abandoned, the Lease rejected, and the stay should be lifted with regard to Movant to allow it to initiate and continue with the Dispossessory to dispossess Debtor along with Debtor's personal property and, to the extent permitted by law, obtain a monetary judgment against Debtor for unpaid post-petition Rent while Debtor remains in possession of the Property.

11.

Because the Lease provides that Debtor is responsible for Movant's attorney's fees in pursuing legal action, Movant is entitled to reasonable attorney's fees from Debtor.

**WHEREFORE**, Movant prays for the following relief:

3

(A)     An Order granting Movant relief from the automatic stay entered under 11 U.S.C.

§ 362 for all purposes allowed by applicable law, including but not limited to,

authorizing Movant to exercise its state law remedies, specifically to initiate and

continue the Dispossessory against Debtor and all other occupants of the Property

and remove all personal property and personal effects therefrom and to seek a

monetary judgment for any post-petition amounts due under the Lease to the

extent permitted by law;

(B)     That the Lease be deemed rejected;

(C)     The Court award Movant reasonable attorney's fees, costs, and fees of bringing

the instant motion;

(D)     The Court waive the 14-day stay of Bankruptcy Rule 4001(a)(3); and

(E)     For such other and further relief as the Court deems just and equitable.

Dated: November 2, 2020

                                        Respectfully Submitted,

                                        /s/ Lynn M. Wilson, Esq.
Morris, Manning & Martin, LLP           Lynn M. Wilson, Esq.
990 Hammond Drive, Suite 300            Georgia Bar No. 768852
Atlanta, Georgia 30328
Telephone: (404) 255-6900              /s/ Peter K. Park, Esq.
Facsimile: (404) 843-2317              Peter K. Park, Esq.
lwilson@mmmlaw.com                     Georgia Bar No. 419210
ppark@mmmlaw.com                       Counsel for Movant

4

# EXHIBIT 1
# Lease Agreement

DocuSign Envelope ID: F2AC81A9-3280-416A-868C-AA5C99AEE000



# RENTAL AGREEMENT

Date of Lease:  11/22/2019

Address of Premises:  1218 CAMPBELLTON #B, Atlanta, GA 30310

Name of Owner:  FYR SFR Borrower, LLC

Agent:  HavenBrook Homes, LLC

Name of Resident:  Jason Whisenton

Authorized Occupants:  N/A

Guarantor/Co-Signer: N/A

Housing Choice:

Utilities Provided: N/A

Term of Lease:  12 Months and 0 Days

Lease shall begin on: 2/1/2020

Lease shall terminate on: 1/31/2021, at 12 Noon.

Rent: **$969.00 Per Month**

Property Administration Fee: **$10.00 Per Month**

Security Deposit: $1,760.00

Pet Fee: $0.00 *If your initial Rental Agreement indicates a Pet Fee has been paid, you are not required to pay an additional Pet Fee with this lease renewal

Pet Rent: $0.00 Per Month

Re-Key Charge: $150.00

Pro-Rated Rent:  $0.00

Pro-Rated Pet Rent: $0.00

Document Number: B8B-47F22

**DISCLOSURE: Havenbrook Homes, LLC**, is authorized to manage the Premises and to act on behalf of Owner with respect to this Lease, including, without limitation, for the purposes of serving of process and receiving and receipting for demands and notice.  Management's corporate



name and license number as required by the Georgia Real Estate Commission are Havenbrook Homes, LLC and H-65353.

## RENTAL AGREEMENT

Each person, or entity that signs this lease or any guarantor under a separate guarantor's agreement is jointly and severally liable for all Rent or other charges which come due. Management may look to any Resident or guarantor for payment of all or a part of any obligation due without first suing or attempting to collect from any other responsible party. Residents will not be released from obligations herein unless approved in writing by the Landlord. Landlord reserves the right to require the remaining Residents requalify. Failure to obtain approval from the Landlord shall constitute an event of default under the Lease. Landlord rents to Resident, and Resident (jointly and severally) rents from Landlord the Premises, on and subject to the following conditions:

**1. DEFINITIONS:** "Landlord" means the owner of the Premises (also, sometimes, "Owner"). "Agent" means the property management company, as agent for the Landlord. "Management" means Landlord and Agent collectively. "Lease" or "Rental Agreement" means this lease agreement, as amended from time to time. "Resident" includes all tenants or other persons who signed or are obligated under the Lease and refers to the tenant. "Rent" means the base lease payment Resident shall pay to Landlord each month as further described in this Lease. "Additional Rent" means any late fees, returned check charges, utility charges, or other fees as further set forth in this Lease. "Concessions" means any incentive or concession provided to the Resident as an inducement to enter into this Lease and to perform strictly according to the terms of the Lease throughout the entirety of the Term, including, but not limited to, free rent, reduced rent, or other incentives, or the reasonable value thereof. "His" shall also mean "her" when applicable. "Guests" and "Invitees" include, without limitation, the family of the Resident(s) and any individual(s), other than Resident, who are occupying, visiting, or attempting to visit the Premises for any purpose whatsoever. "Home" means the single-family structure located on the Premises. "Premises" means the Home located at 1218 CAMPBELLTON #B, Atlanta, GA 30310 together with all fixtures, grounds, landscaping, improvements, and appurtenances. The full legal description of the Premises is the same as is recorded with the Clerk of the Superior Court of the county in which the Premises is located and is made a part of this Lease by reference.

**2. OCCUPANTS:** In addition to Resident, the following individuals will also reside at the Premises ("Occupants"):

Resident represents, warrants and covenants that all persons who reside at the Premises as Occupants are listed above. All Occupants over the age of eighteen (18) are subject to the same criminal background approval required of Residents. No one else may occupy the Premises. Persons not listed above must not stay in the Premises for more than seven (7) consecutive days without Landlord's prior written consent, and no more than thirty (30) days in a calendar year.



**3. TERM:** The initial term of this Lease shall be for the Term set forth on the first page of the Rental Agreement (the "Term"). Resident may not terminate this Lease prior to the end of the Term except in strict compliance with the provisions of this lease. Resident shall vacate the Premises immediately upon termination of the Lease unless (a) Landlord and Resident have extended this Lease in writing or signed a new Rental Agreement or (b) a month-to-month tenancy is created.

**4. POSSESSION:** If there is a delay in delivery of possession by Landlord, Rent shall be abated on a daily basis until possession is granted, and Landlord shall not be liable for any damages for delay in delivery of possession. If Landlord is unable to deliver possession of the Premises within seven (7) days of the Lease start date, then this Lease may be terminated at Landlord's option and all funds received from Resident will be returned. Resident agrees to release and hold Landlord and its agents and representatives harmless from any further obligation and/or consequential damages. The Resident acknowledges that he/she has inspected the Premises with a representative of Management and accurately noted the condition of the Premises within 48 hours of move in and Resident accepts the Premises in its current condition as suitable for occupancy by the Resident unless otherwise noted on the move-in inspection form. Any defects noted after the first 48 hours will be presumed to have been caused by Resident.

**5. RENT:** Rent is payable monthly, in advance, on the first day of each month during the initial Term or any extended Term of this Lease, at the office of Management or such other place as Management may designate. No cash or third party checks will be accepted. No Management employee is authorized to accept cash under any circumstances, and the Resident may not rely on any statement made to him by a Management representative that cash will be accepted. **Payment should be made online through the payment portal provided by Landlord (https://www.havenbrookhomes.com/residents/make-a-payment/) or with cashier's check, money order, credit card, debit card or electronic funds transfer and shall be payable to the order of the Owner unless otherwise specified in written notice from Management.** . All other fees or charges due under this lease in addition to the Rent shall be known as "Additional Rent." In the event that this Lease commences on a date other than the FIRST day of the month, the Rent for the partial month shall be computed based upon a daily rate equal to 1/30th of the monthly Rent, and shall be due upon execution of the Lease.

**5.1 PROPERTY ADMINISTRATION FEE:** Resident shall pay a monthly Property Administration Fee of $10.00 which shall be paid in full on the first day of the month along with other monthly charges and is nonrefundable. The Property Administration Fee is assessed as a fee due to Management for the costs associated with damages and repairs to the Premises caused by natural and unnatural events and general use of the Premises. Failure to pay the Property Administration Fee will result in a late fee and constitutes a default under this Lease. Landlord and Agent do not insure Resident(s) and Occupant(s) for any personal belongings and are not responsible for damages to your personal belongings and the Property Administration Fee does not provide protection for your personal belongings or damages caused by Resident neglect or liability.



**6. LATE PAYMENTS AND RETURNED CHECKS: Monthly rent is due on the 1st day of each calendar month and considered delinquent if not physically received by the Agent by the 5th of the month.** If Management elects to accept rent after the fifth (5th) day of the month, a late charge of 10% of the rent amount (the "Late Charge") shall be due at the time Rent is paid as Additional Rent. All late rents must be paid to Management in the form of a Cashier's Check, Certified Funds or Money Order, as Resident's check will not be accepted. Late payment of Rent constitutes a default under the terms of this Lease; therefore, in addition to the other amounts due hereunder, any concession granted to the Resident becomes immediately due and re-payable as Additional Rent hereunder. Payments received shall be applied, without regard to their characterization or earmarking by Resident, as follows: (i) first to any arrears from previous month(s); (ii) then to any Additional Rent owed; and (iii) the remainder will then be applied to the Rent for the current month.

**7. SECURITY DEPOSIT AND FEES:** Resident agrees to deposit the Security Deposit with Management before taking possession of the Premises as security for Resident's fulfillment of the conditions of this Lease. To the extent provided for by the Local Laws, Management has the right, in its sole discretion, to place the Security Deposit in an escrow account established only for the purpose of holding tenant security deposits, which may be an interest-bearing account, said interest to be retained by Management to defer its cost of administering the Security Deposit account, or to protect the deposit by a surety bond on file with the Clerk of Superior Court and:

Resident's Security Deposit is held in an escrow account at <u>Wells Fargo Bank</u>, <u>3400 Satellite Blvd. Duluth, GA   30096</u>.

Resident's Security Deposit will be refunded within thirty (30) days after vacate date if:

(a) Lease Term has expired or Lease has been terminated by agreement of both parties, and Resident has vacated and surrendered possession of the Premises as of the effective date of such expiration or termination, Resident shall return all keys and garage door openers. Failure to do so constitutes a default under the Lease for failure to relinquish possession and Resident shall be considered as a Tenant Holding Over as provided herein and be subject to Additional Rent and charges;

(b) All monies due Management by Resident for Rent and Additional Rent have been paid through the effective date of termination; and

(c) Premises is not, in the sole discretion of Management, damaged and possession is surrendered in its original condition as of the effective date of termination or expiration, excluding ordinary wear and tear; and

(d) All or any portion of the Security Deposit may be used, as reasonably necessary to (i) cure Resident's default in payment of Rent (which includes Late Charges, NSF fees or other sums due); (ii) repair damage (excluding ordinary wear and tear) caused by Resident or by a guest or licensee of Resident or by a pet; (iii) clean the Premises; and (iv) replace personal property or

DocuSign Envelope ID: F2AC8105-3289-416A-868C-AA5C99AFE000



appurtenances. The Security Deposit shall not be applied to pay the Re-Key Charge if all keys and garage door openers are not delivered to Management immediately upon Resident's move-out. In the event the damages to the Premises exceed the Security Deposit, nothing contained herein limits Landlord's right to demand monies in excess of the amount of the Security Deposit.

(e) Other fees that may be due are not a Security Deposit, are not refundable, and do not reduce liability for damages to the Premises.

(f) THE SECURITY DEPOSIT SHALL NOT BE USED BY RESIDENT IN LIEU OF PAYMENT OF RENT, LATE CHARGES OR OTHER AMOUNTS OWED.

**8. EXTENDED TERMS:** Either party may terminate this Lease at the end of the initial Term by giving the other party at least sixty (60) days written notice prior to the end of the initial Term. If no such notice is given by either party, then the Term of this Lease will be automatically extended on a month-to-month basis at a rent equal to the rent stipulated in the Lease renewal notice delivered by Management to the Resident, plus 20% thereof, until terminated by either party thereafter, which termination shall require thirty (30) days prior written notice if terminated by Resident. During such time as Resident remains on a month-to-month basis, Management and Resident shall remain bound by the terms of this Lease; provided, however, that Management may alter the terms and conditions of this Lease, including, without limitation, the amount of Rent due, upon thirty (30) days written notice to Resident.

**9. EARLY TERMINATION:** Resident may terminate this Lease at any time (an "Early Termination") by:

(a) Giving Management at least sixty (60) days written notice; plus

(b) Paying all monies due through date of termination; plus

(c). Paying an additional amount equal to one month's Rent as due under the Rental Agreement, as consideration for such right of termination; plus

(d) Paying the amount of $2,226.00 as expenses for re-painting and cleaning the Premises if Resident has not resided at the Premises for at least one (1) year prior to termination; plus.

(e). Repaying an amount equal to any Concessions that were given.

The foregoing shall not relieve Resident of the Resident's responsibilities and obligations regarding any damage to Premises. Resident must turn in all keys and garage door openers and receive a receipt from Management; it is the Resident's responsibility to produce this receipt as proof the keys and garage door openers were returned. If locks have been changed or if keys or garage door openers are not returned, Resident will owe and pay the Re-Key Charge. Keys and garage door openers must be physically handed to a representative of Management and may not be left in a night rent drop box. **In an Early Termination, Resident is not entitled to a refund**



**of any notice or termination fees or Security Deposit, even if the Premises is re-let prior to the end of the notice period.**

Management employees are not authorized to waive any notice and/or termination fees, and the Resident has no right to and may not rely on any Management employee's statement that Resident will not have to pay such fees or to comply with this provision in order to terminate the Lease early.

Notwithstanding the foregoing, if Resident is on active duty with the United States military and Resident or Resident's immediate family receives permanent change of station orders or temporary duty orders for a period in excess of three months, Resident's early termination rights under this Lease shall be controlled by the Soldiers' and Sailors' Civil Relief Act of 1940 as amended in 50 U.S.C.A. § 50-590 and O.C.G.A. § 44-7-37 as amended.

**10. NO ASSIGNMENT OR SUBLETTING:** Resident may not sub-let the Premises or assign this Lease without the prior written consent of Management, which consent may be granted or withheld in the sole discretion of Management. Unless such consent is obtained, any assignment, transfer or subletting of the Premises or this Lease or tenancy, by voluntary act of Resident, operation of law, or otherwise will, at the option of Landlord terminate this Lease. Landlord's consent to any one assignment, transfer or sublease, will not be construed as consent to any subsequent assignment, transfer or sublease and does not release Resident of Resident's obligations under this Lease. Landlord may assign this Lease at Landlord's sole discretion. Should Landlord sell, exchange or assign this Lease or the Premises, as applicable (other than a conditional assignment as security for a loan), then Landlord, as transferor, will be relieved of any and all obligations on the part of Landlord accruing under this Lease from and after the date of such transfer provided that Landlord's successor-in-interest does assume such obligations from and after such date.

**11. UTILITIES:** Resident agrees to pay promptly all utilities required under this Lease, including but not limited to electricity, gas, water, hot water, sanitation and sewer (collectively referred to "Required Utilities"), and any optional utilities desired by Resident including but not limited to telephone, internet, satellite or cable television (collectively referred to "Optional Utilities"). All utility accounts shall be established by Resident directly with the applicable utility company. Required Utilities in the Premises must remain active through the full term of the Lease. In the event Resident fails to timely establish utility/services (or utilities/services are transferred back to Management during the term), Management may charge Resident for any utility/service billed to Management with respect to the Premises and may charge a reasonable administration fee (for each month or part thereof) for billing of the utility/service in the amount of $25 per invoice. In the event a utility requires that service remain in the name of the Landlord, Resident acknowledges responsibility for all utility payments due for such service; any such amount shall be considered as Additional Rent and shall be due in accordance with the Lease requirements. Resident's failure to pay for utility services shall constitute a default under the Lease.



**11.1 TRASH COLLECTION:** Resident is responsible for establishing trash collection service in Resident's name. In the event Landlord is responsible for the payment of trash collection when included in municipal taxes, any amounts due for trash collection service shall be added to the Resident's ledger and shall be considered as Additional Rent under the Lease. Tenant is required to contract for professional trash collection and may not take individual responsibility for trash removal.

**11.2 TERMINATION OF REQUIRED UTILITIES BY RESIDENT**: Resident acknowledges that continued occupancy of the Premises when any Required Utilities have been terminated is hazardous. Resident agrees not to terminate, cut off, interrupt, or discontinue any Required Utilities to the Premises, including, but not limited to, electricity, water, gas, and trash collection during occupancy/residency and prior to vacating the Premises.  Breach of this provision shall constitute a default under this Lease, giving Management the right to terminate Resident's right of possession and/or this Lease immediately and to obtain possession of the Premises. Any charges billed to Management for any utilities due to Resident's breach of this provision shall be due as Additional Rent upon demand. Management does not warrant that the service of the utilities will be free from interruption; Resident acknowledges that any one or more of such services may be suspended by reason of accident or of repairs, alterations or improvements, or by operation of law, or for causes beyond the reasonable control of Management. Any such interruption or discontinuance of service shall not be deemed an eviction or disturbance of Resident's use or possession of the Premises, or any part thereof, or render Management liable to Resident for any damages, or entitle the Resident to any reduction or abatement of Rent, or relieve Resident from performance of the Resident's obligations under this Lease.

**12. DAMAGE OR DESTRUCTION OF THE PREMISES**: If the Premises is damaged by fire or casualty or malfunction of equipment or utilities, Resident shall immediately notify Management. Management, at its option, may (a) terminate this Lease upon written notice to Resident without liability for termination, or (b) cause the damage to be repaired, in which event the Rent shall be abated to the extent and only for such time and to the extent that the Premises remains uninhabitable. If Resident or Resident's occupants, or Guests or Invitees, were responsible for the fire or casualty or malfunction of equipment or utilities and the Premises is uninhabitable, then Resident and all others must vacate the Premises and will remain liable for the Rent and damages.

**13.  CONDEMNATION**:  If the whole of the Premises, or any portion thereof which renders the dwelling uninhabitable as determined in Agent's sole and absolute discretion, and  condemned by any legally constituted authority, then this Lease shall terminate as of the date of such condemnation and the rent shall be accounted for as between Management and Resident as of that date.  All damages for any condemnation of all or any part of the Premises including, without limitation, all damages as compensation for diminution in value of the leasehold, reversion and fee of the Premises, shall be the sole property of the Management without any deduction therefrom for any present or future estate of Resident, and Resident hereby assigns to Management all its right, title and interest to any such award; provided, Resident shall have the right to claim and



recover from the condemning authority, but not from Management, such compensation as may be separately awarded or recoverable by Resident by reason of the condemnation and for or on account of any cost or loss which Resident might occur in removing Resident's personal property, provided that the effect of such award is not to reduce the award otherwise payable to Management.

**14**. **DAMAGE TO THE PREMISES**: If through no fault of Resident, the Premises are completely or partially damaged or destroyed by fire, earthquake, accident, or other casualty that renders the Premises totally or partially uninhabitable , as determined by Landlord based on conditions that Landlord deems unsafe or unsanitary;  or by a municipal official, then Landlord may relocate Resident to a comparable property within a reasonable distance of the Premises, and the terms and conditions of this Agreement shall apply thereto.  If no such comparable property is available, then at Landlord's sole option, Landlord may subject to local laws, either (a) terminate the Lease by giving Resident written notice, in which case Rent shall be abated as of the date the Premises becomes totally or partially uninhabitable, and the abated amount shall be the current monthly Rent prorated for that particular calendar month; or (b) promptly repair the damage, in which case during the time required for repairs, Landlord may, at Landlord's sole discretion and subject to local laws, either (i) pay reasonable costs for temporary housing for Resident and meals in an aggregate amount not to exceed 125% of Resident's daily Rent until the repairs are substantially completed and Resident can reasonably resume use and occupancy of the Premises, provided however, that Resident shall continue to pay the full amount of Resident's Rent as required hereunder, or (ii) reduce Resident's Rent to the extent to which the damage interferes with Resident's reasonable use of the Premises.  If damage occurs as a result of an act of Resident or a guest of Resident, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

**15. HOLD OVER/TRESPASS:** Resident shall remove all of Resident's property and deliver possession of the Premises in a clean condition and good order and repair to Management upon termination or expiration of this Lease.  In the event the Resident fails to vacate the Premises after termination, non-renewal or expiration of this Lease,  Resident shall pay Management an amount equal to two (2) times the existing Rent, prorated for each day held over and beyond the termination or expiration of this Lease, in addition to the other damages provided for under this Lease.  Management's rights continue and survive independently beyond expiration or termination of this Lease or Resident's occupancy of the Premises.

**16. KEY RETURN:** Keys must be physically handed to a representative of Management and may not be left in the Premises. Rent and all related fees and charges shall be due until such time as Management receives the keys to the Premises. Resident is responsible for receiving a receipt from Management. Such receipt shall be the sole proof of keys being returned by Resident. After termination or expiration of this Lease, Resident shall be deemed to be a tenant at sufferance. After termination, Resident shall not return to any area of the Premises.

**17. PROHIBITED ACTIVITY**:  Resident, any member(s) of Resident's household, a guest or any other person affiliated with Resident at or near the Premises shall not;  (a) engage in criminal activity on or near the Premises; including drug-related criminal activity (which means the illegal

B8B-47F22



manufacture, cultivation, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use a controlled substance); (b) engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near the Premises; (c) permit the Premises to be used for or to facilitate criminal activity regardless of whether the individual engaging in such activity is a member of the household or a guest; or (e) engage in any illegal activity, including prostitution, criminal street crime, gang activity, threatening or intimidating assault, including the unlawful discharge of firearms on or near the Premises; (f) the health, safety and or welfare of Landlord, its agents, other Residents neighbors or imminent serious damage to the property. Resident shall not permit entry of any person as his Guest or Invitee if notified that this Guest's or Invitee's presence on the Premises is subject to criminal trespass under O.C.G.A. § 16-7-21 or that the Guest and/or Invitee is in violation of this Lease. Management may terminate the Lease and possession of the Premises if any Resident allows an unauthorized person or trespasser access to the Premises in violation of this provision or paragraph. Management's rights under this paragraph shall continue and survive independently beyond expiration or termination of the Lease or Resident's occupancy of the Premises.

**18. RIGHT TO ACCESS:** Management may enter the Premises (but with no obligation to do so) during all reasonable hours, at any time, without notice. In non-emergency situations, including, without limitation, for the purpose of inspection, maintenance, repair, alterations as may be deemed necessary by Management for the safety and preservation of the Premises or for exhibiting the Premises for sale, lease, inspection, or mortgage financing; Management may enter the Premises upon 24 hours' notice to the Resident. Management may enter the Premises at any time without notice to Resident to protect life and prevent damage to the Premises in the event of an emergency or perceived emergency by Management. For purposes of this paragraph, Resident agrees to notify Management of any anticipated extended absence in excess of seven (7) days, and, during said absence, Management is specifically authorized, but is not obligated, to enter the Premises at times reasonably necessary. Resident authorizes Management to show the Premises to prospective residents once Resident has given or received a notice of non-renewal or termination.

**19. USE:** Premises shall be occupied only by persons named in Resident's application to rent or listed as Authorized Occupants in this Lease. The Premises shall be used for Residential purposes only and so as to comply with all federal, state, county, and municipal laws and ordinances and subject to any and all covenants and restrictions of record (as they may be hereafter amended and/or modified from time to time) and any and all rules and regulations imposed by the applicable homeowner's association. Resident agrees that the Premises will not be used for the operation of a business or other commercial enterprise without Landlord's prior written consent. Management may promptly report any suspicious activities to, and cooperate fully with, the appropriate authorities without being deemed to invade the Resident's privacy. Resident shall not commit waste to the Premises and shall not commit any act nor fail to take any action that would allow or cause endangerment to life, health, safety, welfare or property. Resident shall maintain the Premises in a clean, orderly, and sanitary condition and shall not allow any damages to the Premises, normal wear and tear excepted, or infestation of vermin, insects, bed bugs, rodents, or



other pests.  Resident shall not bring abandoned or discarded furniture, clothing, bedding, or other personal property onto the Premises as it could introduce an infestation of pests and bed bugs. Resident shall not place in any trash receptacle, nor keep or dispose of any material, which is environmentally hazardous. Noxious or offensive smells are not permitted, and Resident shall be liable for damages exceeding normal wear and tear for the repair or replacement of any carpet, flooring, ceiling, or walls that are permeated with noxious or offensive odors, including, but not limited to, cigarette and tobacco smoke or animal odors. Residents shall park only on concrete or hardcore surfaces. There shall be no parking or storage of vehicles, trailers, RVs, or the like, on grass at any time.  Resident shall not, on or in the  Premises, improperly dispose of motor oil, paints, paint thinners, gasoline, kerosene or any other product which can cause environmental contamination on or in the  Premises.  DO NOT PUT PAINT OR CHEMICALS DOWN THE DRAINS OR TOILETS.  Motor vehicles with expired or missing license plates, non-operative vehicles, boats, trailers, RVs and campers are not permitted on the Premises without written permission of the Management.  Any such vehicle may be removed by Management at the expense of Resident for storage or for public or private sale, at Management's option, and Resident shall have no right or recourse against Management in connection therewith.  Resident, Guests, and Invitees shall act in a courteous and reasonable manner towards Management.  Resident is prohibited from committing business libel or slander or making untruthful, unfair, or misleading statements to others about Management, its employees, agents, or the Premises. Any form of verbally or physically abusive, intimidating, or aggressive behavior directed at Management or any other person is prohibited. Resident, Guests, and Invitees shall not interfere with the daily business operations or job duties of Management or its employees. When notified by Management, Resident shall be prohibited from contacting any Management or employee and must conduct all further communications in writing. Resident is liable for the conduct of his Guests and Invitees. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL BREACH OF THIS LEASE AND SHALL CONSTITUTE CAUSE FOR IMMEDIATE TERMINATION OF THIS LEASE.

**20. HOA:**  If applicable, the monthly assessments arising from any homeowner's association that relates to the Premises ("HOA") shall be paid directly by Landlord and are included in the Rent. To the extent Landlord has provided HOA governing documents to Resident in the form of

Covenants and Restrictions.  Resident hereby represents and warrants to Landlord that Resident has (a) reviewed the governing documents and will comply with all applicable HOA governing documents and other instruments of record, (b) shall provide written notice to Management within five (5) days of receipt of any notice of violation of the HOA governing documents, (c) Resident shall not have voting rights in the HOA, (d) Resident shall reimburse Landlord for any fines or charges imposed by the HOA as a result of Resident's violation or failure to comply with any of the HOA governing documents and other instruments of record, (e)  Resident shall be assessed all fines and charges incurred as a result of Resident's violation or failure to comply with any applicable HOA governing document or other instruments of record as Additional Rent. Resident's failure to comply with all applicable HOA governing documents and other instruments of records shall be considered a default under the Lease.

B8B-47F22

DocuSign Envelope ID: F2AC8165-3280-416A-868C-AA5C99AFE000



**21. PETS:** No animals of any kind, with the exception of bona fide service animals, shall be permitted on the Premises without the prior written consent of Management and the execution and delivery by Resident of a Pet Addendum to this Lease and compliance with the terms thereof. Management may enter the Premises at any time to remove any unauthorized animals, or animals believed to be neglected, distressed or endangered. Resident is liable for all costs of retrieving, caring for, and boarding of any animals removed by Management or abandoned by Resident and Resident relieves Management from liability of any kind when Management causes the removal of any animal from the Premises.

**22. DEFAULT BY RESIDENT:** If Resident fails to pay Rent or other charges as and when due hereunder, or if Resident abandons the Premises, or if Resident fails to perform any of the Resident's obligations hereunder, or if any facts contained in Resident's rental application are untrue or misleading in any material respect, or if Resident fails to pay or continue utility service as required under this Lease, or if Resident allows unauthorized persons access to the Premises in violation of this Lease, or if Resident or Guests or Invitees cause damage in excess of ordinary wear and tear, or Resident or his Guests violate the Rental Agreement and any addenda, then, upon the happening of any said events, Resident shall be in default hereunder, and, Management at its sole option, may terminate this Lease and/or Resident's right of possession by written notice to Resident. Resident shall surrender possession of the Premises to Management upon the effective date of such termination and Resident shall be liable to Management for, and shall indemnify Management against, all damages as a result of such breach of the Lease by Resident, available at law or in equity, including rent loss and other expenses (including without limitation, reletting, refurbishing, cleaning or otherwise making the Premises suitable for reletting) suffered or incurred by Management as a result of Resident's default and/or the termination of this Lease. In the event Resident fails to pay Rent or other charges when due, or in the event the Resident is otherwise in default as provided in this Lease, Resident agrees to pay all costs of collection including without limitation, any collection agency fees, and attorney's fees and other costs of Management.. In any civil action or dispossessory for breach of this Lease, the prevailing party will be entitled to reasonable and customary attorney's fees actually incurred and all expenses of litigation, including, but not limited to, court costs and administrative filing fees for evictions plus all costs of collection. All sums due which are in default shall bear interest at the lesser of 1.5% per month or the greatest amount permissible by law. No termination of this Lease prior to the normal ending thereof shall affect or abridge Management's right to collect Rent and other charges for the period prior to such termination or as otherwise provided in this Lease.

**23. MAINTENANCE:** Resident acknowledges that it is necessary for Resident to provide appropriate climate control, keep the Premises clean, and take other measures to retard and prevent mold and mildew from occurring and/or accumulating in the Premises. Resident agrees to clean and dust the Premises on a regular basis and to remove visible moisture accumulation on windows, walls and other surfaces as soon as reasonably possible. Resident agrees not to block or cover any of the heating, ventilation or air-conditioning ducts in the Premises. No waterbeds or space heaters are permitted on the Premises. Resident agrees to immediately report to Management: (i) any evidence of a water leak or excessive moisture in the Premises; (ii) any evidence of mold or

B8B-47F22



mildew-like growth that cannot be removed by simply applying a common household cleaner and wiping the area; (iii) any failure or malfunction in the heating, ventilation, air conditioning systems or laundry systems in the Premises; and (iv) any inoperable doors or windows. Resident further agrees that Resident shall be responsible for damage to the Premises and Resident's property as well as injury to Resident and permitted occupants resulting from Resident's failure to comply with the terms of this Paragraph. Resident's failure to maintain and repair any item for which Resident is responsible will give Landlord the right to perform the required maintenance and charge Resident the cost of such maintenance. Resident's failure to comply with the terms of this paragraph shall constitute a default under the Lease.  Resident's compliance with the terms of this Paragraph shall not absolve Resident of Resident's obligations to maintain and repair the Premises in accordance herewith this Paragraph nor give Resident cause for constructive eviction, abatement or termination.

**24.  REPAIRS:** Resident acknowledges that Resident has inspected the Premises and accepts the condition as is.  Within a reasonable period of time after receipt of written notice from Resident, Management will repair major deficiencies which create unsafe or uninhabitable conditions. Major repairs shall include: electrical, plumbing, heating, cooling, built-in appliances or structural defects.  Resident shall, throughout the initial term of this Rental Agreement, and any extension or renewal thereof, at its expense,  otherwise maintain in good order and repair the Premises, including but not limited to periodic maintenance to equipment and fixtures, except those repairs expressly required to be made by Management hereunder.  Resident further agrees to care for the ground around the dwelling, including cleaning of paving, the mowing of grass, care of shrubs and general landscaping. If Resident fails to fulfill any such obligations to care for the Premises pursuant hereto, Management may (but shall not be obligated to) perform or direct the performance of such services necessary to fulfill Resident's obligations to care for the Premises at the sole expense of Resident, the cost of such services, plus a Ten Percent (10%) management fee, shall be considered Additional Rent and be due and payable by Resident immediately. Management agrees to keep in good repair the roof, foundations and exterior walls of the dwelling (exclusive of all glass and exclusive of all exterior doors) and underground utility and sewer pipes outside the exterior walls of the dwelling, except repairs rendered necessary by the negligence or intentional wrongful acts of Resident, Guests, or Invitees.  Resident shall promptly report in writing to Management any defective condition known to it which Management is required to repair and failure so to report such conditions shall make Resident responsible to Management for any liability incurred by Management by reason of such conditions.  If any damage, beyond normal wear and tear, is caused by Resident, Guests, or Invitees, Resident agrees to pay Management the cost of repair as Additional Rent with the next rent payment due hereunder. Resident may not remodel or make alterations without the prior written consent of Management. Alterations include, without limitation, any structural change, wallpapering, painting of the Premises, changing locks, modification of appliances, or removal of any fixtures, trees or shrubs.  No nails, screws or adhesive hangers, except standard picture hooks, shade brackets and curtain rod brackets,  may be placed in walls, woodwork or any part of Premises without Management's written permission. Absolutely no penetration, by nails or otherwise, is permitted to the exterior siding of the Premises.

DocuSign Envelope ID: F2AC81A6-3280-416A-868C-AA5C99AFE0D0



**25. NEW HOME ORIENTATION WELCOME KIT:** As a material consideration of this Lease, Resident shall comply and cause Resident's Guests and Invitees to comply with the Welcome Kit and with modifications Management may make from time to time and publish in writing. Such Welcome Kit with modifications as referenced heretofore constitute a part of the Lease. Management will provide Resident with a printed copy of the Welcome Kit.

**26. MOLD:** Mold consists of naturally occurring microscopic organisms which produce spores. The mold spores spread through the air and the combination of excessive moisture and organic matter allows for mold growth. Resident agrees to maintain the Premises free of dirt, debris and moisture that can harbor mold. Resident shall, at its sole cost and expense (a) clean any mildew or mold that appears with an appropriate cleaner designed to kill mold, (b) clean and dry any visible moisture on windows, walls, and other surfaces, including personal property as soon as possible, (c) use all air conditioning, if provided, in a reasonable manner and use heating systems in moderation, (d) keep the Premises properly ventilated by periodically opening windows to allow circulation of fresh air during dry weather only, (e) use reasonable care to close all windows and other openings to prevent water from entering the Premises, (f) use exhaust fans, if any, in the bathrooms and kitchen while using those facilities and notify Landlord of any inoperable exhaust fans, (g) hang shower curtain inside bathtub when showering and only shower in the bathtub, (h) immediately notify Landlord of any water intrusion, including roof or plumbing leaks, drips or "sweating" pipes, (i) notify Landlord immediately of overflows from bathroom, kitchen, or laundry facilities, (j) notify Landlord immediately of ant significant mold growth on surfaces in the Premises, (k) not leave clothes, towels, laundry, or other items comprised of fabric in wet or damp piles for an extended period of time and (l) allow Landlord, with appropriate notice, to enter the Premises to make inspections regarding mold and ventilation.

Landlord reserves the right to terminate the tenancy and Resident agrees to vacate the Premises in the event Landlord in its sole judgment feels that there is either mold or mildew present in the Premises which may pose a safety or health hazard to Resident or other persons and/or Resident's actions or inactions are causing a condition which is conducive to mold growth. Resident acknowledges and agrees that Landlord and Landlord's employees, agents, successors, and assignees will not be responsible for damages or losses due to mold growth to the extent resulting from Resident, members of Resident's household or Resident's Guests or Invitees' failure to comply with these requirements.

**27. PEST CONTROL:** Resident is responsible for keeping the Premises clean and free of all pests, at its sole cost and expense and shall be responsible for all pest control. Subject to local laws, Landlord shall have no responsibility for any damage to Resident or any other person or property at the Premises as a result of pests or pest control treatment.

B8B-47F22



**28. BEDBUGS:** "Bedbug" is the name given to a parasitic insect that feeds on the blood of warm-blooded animals including humans. Landlord has no knowledge of any bed bug infestation or presence in the Premises. It is unlawful and a breach of this Lease for Resident to allow any materials that are infested with bedbugs to be brought to the Premises. In the event of a bedbug infestation, Resident shall provide Landlord with written notice within five (5) days of Move In and in all other circumstances during the term of the Lease within ten (10) days of Resident's discovery or suspicion of the same. Failure to notify Landlord within five (5) days of Move In shall constitute a waiver by Resident of any claim against Landlord associated with any such infestation and treatment associated thereof shall be Resident's responsibility; and failure by Resident to notify Landlord of an infestation during the Lease term within the ten (10) day period shall constitute a waiver by Resident of any claim against Landlord associated with any such infestation and treatment thereof shall be Resident's responsibility. If Resident knowingly brings bedbugs into the Premises or once aware of the presence of bedbugs fails to notify the Landlord within 48 hours of when evidence of bedbugs is discovered, Landlord may consider this a material breach of the Lease and terminate this Lease upon notice to Resident.

**29. FIRE EXTINGUISHERS AND SMOKE ALARMS:** It is the responsibility of the Resident to periodically check the fire extinguisher and smoke alarm(s) furnished to Resident in the Premises, if any, and to advise Management of any malfunctions and whether such equipment needs to be recharged or replaced. Any such equipment is to remain in and as a part of the Premises. In the event either such fire extinguisher or smoke alarm is removed from the Premises, a charge of $50.00 will be assessed to the Resident for each piece of such equipment removed from the Premises, and Resident shall be liable for and shall indemnify and hold harmless Management from all damages and losses as a result thereof. Resident further agrees that Resident shall be responsible for (and shall indemnify and hold Management harmless from) damage to the Premises and Resident's property, as well as injury to Resident, permitted Occupants, and Guests and Invitees, resulting from Resident's failure to comply with the terms of this Paragraph or with the Community Policies.

**30. LIMITATIONS ON LANDLORD'S LIABILITY**: To the full extent permitted under local laws, (a) Landlord and Resident agree that Landlord will not be liable for any damages, injury of losses to person or property caused by Residents, or other persons theft, burglary, vandalism, or other crimes, (b) Landlord shall have no duty to furnish alarms of any kind, security guards, or additional locks or latches and Resident shall not make any additions to the existing locks for any reason without Landlord's prior written consent, (c) Resident shall indemnify and hold harmless Landlord and Landlord's agents, employees, lenders and affiliates for from and against any and all claims, liabilities, damages, costs or expenses that arise from or are caused by Resident's use or occupancy of the Premises except to the extent arising from the sole negligence or willful misconduct of Landlord, its agents contractors or employees. In the event Landlord or any successor to Landlord's interest in the Premises shall convey or otherwise dispose of the entire Premises and turn over to the transferee any funds held by it hereunder in which Resident has an interest; all liabilities and obligations on the part of such Landlord or its successor as Landlord under this Lease accruing before such conveyance or disposal shall terminate upon such

B8B-47F22

DocuSign Envelope ID: F2AC81A6-3280-416A-868C-AA5C99AFE000



conveyance or disposal, and thereupon all such liabilities and obligations shall be binding upon any such new owner of Landlord's interest in the Premises.  Notwithstanding anything to the contrary contained in this Lease (each and every provision of this Lease being hereby made specifically subject to the provisions of this Section), if Landlord or any successor in interest of Landlord shall be an individual, grantor trust, joint venture or corporation, tenancy-in-common, firm or partnership, general or limited, it is specifically understood and agreed that there shall be absolutely no personal liability on the part of such individual or entity, or on the part of the members of such corporation, firm, partnership, grantor trust or joint venture with respect to any of the provisions of this Lease, and each and every Resident hereunder shall look solely to the equity of Landlord or such successor in interest, in the Premises for the satisfaction of each and every remedy of Resident or by any such successor in interest of any of the provisions of this Lease to be performed by either or Landlord or Management, such exculpation of personal liability to be absolute and without any exception whatsoever.

**31. FAILURE OF MANAGEMENT TO ACT:** Failure of Management to insist upon strict compliance with the terms of this Lease, or uniform enforcement thereof throughout the Premises, shall not constitute a waiver of any of Management's rights or Resident's obligations.

**32. REMEDIES CUMULATIVE:** All remedies under this Lease or available by law or in equity shall be cumulative.  Breach of this Lease establishes a breach by Resident.

**33. RENEWAL TERM AND NOTICE OF NON-RENEWAL:** The provisions of this Section are in addition to, and not in limitation of, the provisions of Section 8. Management shall have the right to increase the Rent due at the end of the initial term or any subsequent renewal period. Management employees are not authorized to accept a verbal notice of non-renewal or termination from Resident and the Resident has no right to rely on a Management employee's statement that a verbal notice is acceptable. Resident's notice must be in writing, dated, signed, and specify the move-out date. Resident should keep a signed receipt of the non-renewal notice for his personal records in case of any dispute as to whether such notice was given and received. If Resident does not obtain a signed receipt of such notice from Management or if Management does not have a signed original non-renewal notice from Resident, then it will be presumed that Resident failed to give a proper written notice.

**34. FLOOD DISCLOSURE:** Management states that the Premises _ have X have not (one must be checked) been damaged in any manner by flooding as defined in O.C.G.A. Sec. 44-7-20 in 3 of the last 5 years.

**35. NOTICES:** Any notice required by this lease shall be in writing, dated, and signed and shall be deemed to be given immediately if delivered personally or refused, and upon receipt or three days after mailing if mailed by registered or certified mail, return receipt requested, or by standard overnight delivery as provided by O.C.G.A.§ 9-10-12(b): (a) if to Resident, to the Premises or the last known address of Resident; (b) if to Management, to the address listed in this Lease.

B8B-47F22



**36. ABANDONMENT:** Resident shall not abandon the Premises or Resident's personal property. If Resident removes or attempts to remove all or substantially all of Resident's personal property from the Premises other than in the usual course of continuing occupancy without first having paid Management all monies due for proper termination of this Rental Agreement, Resident shall be in default under this Lease, and Management shall have the right, without notice, to store or dispose of any property left in or upon the Premises by Resident. Management shall also have the right to store or to dispose of any of Resident's property remaining in or upon the Premises after the termination of this Lease.  Resident agrees that such circumstances as evidence of Resident's abandonment of the Premises include, but are not limited to, the failure to pay Rent or other charges, discontinuance of any utilities, failure to respond to any notices, phone calls, or correspondence from Management, or removal of a substantial amount of Resident's personal property from the Premises.  In the event the Premises is abandoned, Management shall also have the right, without notice, to secure the Premises with new locks, to store or dispose of any property or personal possessions left in or upon the Premises or Property by Resident, Guests, or Invitees, and to re-enter the Premises for new occupancy, without filing a dispossessory warrant or obtaining a writ of possession, and without waiving any claims against the Resident hereunder. Resident agrees that Management shall have no liability for any actions taken to secure the Premises, to obtain possession of the Premises, or to store or dispose of any personal property or possessions found in the Premises when the Premises is abandoned or upon termination of this Lease. Resident acknowledges and agrees that Management's acts or failure to act with regard to securing the Premises, obtaining possession of the Premises, or storing or disposing of any personal property or possessions found in or upon the Premises under circumstances which are or may indicate abandonment are a contractual matter to which the Resident has given the Resident's consent, and any alleged breach shall not give rise to a claim against Management in tort, nor to a claim for punitive, consequential, or other damages.

**37. MORTGAGEE'S RIGHTS:** Resident's rights under this Lease shall at all times be automatically subordinate and subject to any deed to secure debt, deed of trust, or mortgage which is now or shall hereafter be placed on the Premises. If requested, Resident shall execute promptly any certificate or document that Management may request to specifically implement the terms of this paragraph.

**38. SECURITY:** Resident acknowledges and agrees that Management has not made any representations, covenants, or warranties, either express or implied, that security devices or security personnel are, have been, or will be provided to protect Resident or the property of Resident, Guests, or Invitees from crime to person or Property. Management is not an insurer of Resident's safety or the safety of Resident's property. Resident acknowledges and understands that Resident has a duty to exercise care for Resident, Guests, and Invitees of the Premises' safety and welfare, and that Management is not liable for criminal acts of other persons. Resident agrees to rely solely on local law enforcement agencies for all information regarding criminal activity in the geographic area of the Premises. Resident agrees to look solely to public law enforcement, emergency services, or fire services for security services or protection.  RESIDENT AGREES THAT THE FURNISHING OF SAFETY DEVICES AND PATROL SERVICE (IF

B8B-47F22



APPLICABLE) DOES NOT CONSTITUTE A GUARANTEE OR WARRANTY OF THEIR EFFECTIVENESS OR OPERATION OR IMPOSE ANY OBLIGATION TO CONTINUE SUCH ITEMS, EXCEPT AS MAY BE REQUIRED BY APPLICABLE STATE LAWS. RESIDENT RELEASES AND AGREES TO HOLD HARMLESS MANAGEMENT FROM ALL CLAIMS WITH RESPECT TO ANY PERSONAL INJURY OR PROPERTY DAMAGE WHICH MAY IN ANY WAY RELATE EITHER TO RESIDENT'S RELIANCE UPON ANY OF THE SAFETY DEVICES OR PATROL SERVICE, OR ANY ABSENCE, DEFECT, MALFUNCTION, OR INADEQUACY THEREOF.

**39. INDEMNIFICATION:** Resident releases Management and Landlord from liability for, and agrees to indemnify Management and Landlord for, from and against all costs, losses, expenses and damages, including, without limitation, reasonable attorneys' fees, incurred or suffered by either or both Management or Landlord resulting from, arising from, related to, connected to, or caused by, any one or more of the following: (a) Resident's failure to perform any covenant or condition of this Lease; (b) any damage or injury happening in or about Premises to Resident, permitted occupants of the Premises, or Guests or Invitees; (c) Resident's failure to comply with any requirements imposed by any governmental authority; (d) any judgment, lien or other encumbrance filed against Premises as a result of any act or omission of Resident, Guests, or Invitees; (e) the negligence or willful or wanton acts of one or more of Resident, Guests or Invitees; or (f) Resident's occupancy of the Premises.

**40. SEVERABILITY:** If any provision of this Lease shall be declared invalid or unenforceable, the remainder of the Lease shall continue in full force and effect.

**41. ENTIRE AGREEMENT:** This Lease and any attached addenda and riders constitute the entire agreement between the parties and no representations, inducements, promises or agreements, oral or otherwise between the parties not embodied herein shall be of any force or effect.

**42. LEAD BASED PAINT NOTIFICATION (LBPN):** Prior to entering into this Lease, Resident has had an opportunity to inspect the Premises for the presence of lead-based paint, if any, in the Home. The LBPN addendum, if applicable, is incorporated by reference.

**43. ATTORNMENT, SALE, FORECLOSURE, RENOVATION AND FORMER EMPLOYEES:** In the event the Premises or any portion thereon is foreclosed, sold, placed under contract to be sold, or scheduled for substantial renovation, rehabilitation, or demolition, either Management or the new owner shall have the right to terminate the Lease on Sixty (60) days written notice. In the event that Management elects to terminate the occupancy or this Lease under this provision, then, as consideration for such right of termination and during the Thirty (30) day period immediately preceding either the termination date of Resident's occupancy or the termination of the Lease, the Resident's Rent shall be reduced by Fifty percent (50%); however, if the Resident shall hold over beyond the termination date, then Resident shall pay the holdover Rent as provided in Paragraph 8.

B8B-47F22

DocuSign Envelope ID: F2AC8AA6-3289-416A-868C-AA5C99AFE000



**44. USUFRUCT:** This lease only creates the relationship of landlord (Management) and tenant (Resident) and does not create any ownership or transferable rights in real estate. This lease is a "usufruct" and not an estate for years.

**45**. **JOINT AND SEVERAL LIABILITY:** Each person or entity that signs this Lease or any guarantor under a separate guarantor's agreement is jointly and severally liable for all rent or other charges which come due. Management may look to any Resident or guarantor for payment of all or a part of any obligation due without first suing or attempting to collect from any other responsible party.

**46. KNOW YOUR NEIGHBORS:** Certain individuals convicted of certain sex-related crimes are required to register their name and current address on an index maintained by the state or county in which they reside. You may access that index in order to determine whether any such individuals live in proximity to a certain location. The public may access the Internet to view all sex offenders registered in the state. The Department of Justice's Sex Offender Registry can be obtained through the Internet at www.nsopr.gov. The public may also contact the local Law Enforcement Office to view a list of the sex offenders listed in their county.  Residents are encouraged to research the Sex Offender Registry prior to executing the Lease as the proximity of the Premises to the residence of a known sex offender shall not be cause for Resident to breach the Lease.

**47. FORCE MAJURE:** Any delay or failure in the performance of Landlord hereunder shall be excused if and to the extent caused by the occurrence of any event that is beyond Landlord's control, such as fire, earthquakes, wars, sabotage, terrorism, vandalism, governmental acts, injunctions, or labor strikes, acts of God and any other occurrences that are avoidable or unpreventable despite reasonable efforts to prevent avoid, delay, or mitigate the effects thereof.

**48. ATTACHMENTS AND ADDENDA:** Resident certified that he/she has received a copy of this Lease and certain attachments and addenda, and understands that these attachments and addenda are incorporated into and form a part of this Lease.

B8B-47F22



THIS IS A LEGALLY BINDING CONTRACT. RESIDENT ACKNOWLEDGES THAT RESIDENT HAS HAD AN ADEQUATE OPPORTUNITY TO READ AND STUDY THIS LEASE AND TO CONSULT WITH LEGAL COUNSEL IF RESIDENT HAS SO DESIRED.

Resident agrees to rent the Premises on the above terms and conditions.

_____                                    12/3/2019
Jason Whisenton (Joint and Several)                                                      Date


Landlord agrees to rent the Premises on the above terms and conditions.

By:_____
           *Marissa Brissett*
           39F4D4DA16E5440...

_____
                    Marissa Brissett

Title: _____Property Manager_____

License Number:____375647____

As to Management, this ___ day of ____11/24/2019____, 20___.

DocuSign Envelope ID: F2AC81A6-3280-416A-868C-AA5C99AFF000



Dear Resident(s),

We are thrilled you have chosen to stay in your home! We are excited that you are allowing us to provide you another year of great service.

In this packet you find important reminders regarding our expectations during your new lease term and contact information for your property manager.

We have also included our home maintenance guide which provides a lot of great tips on the best ways to maintain the home during your residency.

Thank you for choosing HavenBrook Homes!

HavenBrook Homes Team



DocuSign Envelope ID: F2AC81A6-3280-416A-868C-AA5C99AFE000

# Resident Update Form

| Resident Name | Mobile Number | Work Number | Email Address |
|---|---|---|---|
| Jason whisenton | 4042003526 | 4042003526 | whisenton.jason@icloud.com |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Emergency Contact | Contact Number | Relationship |
|---|---|---|
| Torie whisenton | 4703631548 | Family |
| | | |

DocuSign Envelope ID: F2AC84A6-3280-416A-868C-AA5C99AFE000
Case 21-03076-sgj Doc 33 Filed 11/02/20 Entered 11/02/20 10:50:10 Desc Main
Document Page 27 of 40

Leasing Kit: Lease Summary

## Rent:

❑ **Hassle Free Online payments can be made by visiting** https://www.havenbrookhomes.com/residents/make-a-payment/
❑ Rent is due on the 1st and late after the 5th of each month.
❑ A monthly property administration fee will be due on the first of each month along with rent, please refer to your lease for details.
❑ Late fees are 8%-10% of your monthly rental amount (Varies by market).
❑ Evictions are filed at the earliest possible date after demand for non-payment. Additional legal fees may be charged.
❑ Partial payments are not accepted.
❑ Personal checks are not accepted after the 5th of each month.

## Lease Terms:

❑ 60 days written notice is required prior to the lease end date if you intend to vacate your home.
❑ Month to Month fees of an additional 20% of your monthly payment will be charged for occupancy past lease expiration without a signed lease renewal.
❑ Early lease terminations require a 60 day notice, one month's rent (as a termination fee), repainting and re-cleaning fees *(varies per home; please reference your lease)* repayment of any concessions previously given and forfeiture of the security deposit.

## Living in the Home:

❑ Only occupant(s)/pet(s) listed on the lease are allowed to live in the home.
❑ If applicable, a one time $250 non-refundable pet fee per pet will be charged, in addition to a $25 monthly pet rent per approved pet.
❑ Assignment or subletting is prohibited during your lease term.
❑ Home must be used for residential use only.
❑ Havenbrook does not insure resident(s) or their belongings.
❑ All utilities must stay active throughout the entire lease term.
❑ Fireplaces are not to be used, the flue has been disabled for the safety of our resident(s).
❑ General maintenance is the resident's responsibility.
    ❑ Examples: Regular yard maintenance, keeping your home clean, performing routine maintenance such as ac filter change, smoke detector and thermostat battery change, pest control, light bulb replacement.
❑ Please note that HavenBrook Homes will charge the resident for maintenance issues caused by the resident.
    ❑ Examples: Plumbing charges for clogged toilets caused by foreign objects, grease and/or hair, HVAC charges due to dirty filter, no-show for set appointments, HOA violations, home damages including but not limited to, replacements or repairs to windows, doors, mailboxes, blinds, and/or failure to report an emergency work order that caused additional repairs such as a plumbing leak.

*By signing below, I/we am/are confirming that we have read our rental lease agreement and we understand the terms contained within it.*

_____          _____
RESIDENT SIGNATURE                                        12/3/2019
                                                          DATE

_____          _____
RESIDENT SIGNATURE                                        DATE

_____          _____
HAVENBROOK REPRESENTATIVE SIGNATURE                       11/24/2019
                                                          DATE

# 1218 CAMPBELLTON #B, Atlanta, GA 30310

_____
PROPERTY ADDRESS (STREET, CITY, STATE, ZIP)

DocuSign Envelope ID: F3AC81A6-3290-416A-868C-AA5C99AFE0001

Case 1:21-cv-01323-MLB   Doc#   Filed 11/02/20   Entered 11/02/20 10:50:10   Desc Main
Document   Page 28 of 40



At HavenBrook, we are dedicated to helping you have the best experience living in your HavenBrook home. Please take a minute to get to know our team, and please know that we look forward to supporting you!

## Property Management Team

Our Property Management team is committed to ensuring that you have an enjoyable living experience in your HavenBrook home.
We're here to serve as your primary contact for customer service and to assist with any  non-maintenance needs.
We will also help with your lease renewal. Simply email or call your Property Management Team for assistance with any property-specific questions or concerns.

## Need help?

**Maintenance Requests:**

855.400.4424

**General Questions/Concerns:**

PM Email: mbrissett@havenbrookhomes.com

PM Direct Line:

**After Hour Emergency Work Orders:**

855.400.4424

DocuSign Envelope ID: F2AC81A6-3280-416A-868C-AA5C99AFF000
Case 20-43258-elm Doc 45 Filed 11/02/20 Entered 11/02/20 10:50:10 Desc Main Document Page 29 of 40



# Pay Online

Option 1


www.havenbrookhomes.com/residents/make-a-payment

## PAY RENT ONLINE

**Paying rent with HavenBrook is easier than ever before!**

In an effort to simplify rent payments for our residents, we have an online resident portal. To access the portal you must use the email we have on file for your household and the registration code provided to you in your email. If you have not received an email with your registration code, please contact your property manager to update your personal information.

We encourage you to review the online payment FAQ's located here to learn more.

Questions? Contact your property manager or call us at 855.820.9574.



**PAY RENT**



*Convenience fee may apply.*
*Please note partial payments are not accepted.*

# Walk In Payment System (WIPs)

Option 2

Our walk-in payment system allows you the flexibility you need. It's fast, safe, and convenient.

➢ Easy – Pay at more than 20,000 locations (go to www.checkfreepay.com/agentlocator)

➢ Fast – Same day credit

➢ Simple – Just present your card and cash payment

➢ Convenient – Many agents are open 24/7

➢ Secure – Receipt provides immediate proof of payment

*Contact your property manager for more information.*

DocuSign Envelope ID: F2AC8AA5-3290-416A-868C-AA5C99AFE0001     Created 11/02/20     Entered 11/02/20 10:50:10     Desc Main
Document



There are two classifications for maintenance requests, based on the severity of the issue and potential damages/safety concerns. We've provided descriptions of each of the two categories below:

1. **Emergency Requests**: Emergency Requests are events that prohibit residents from continuing to safely occupy their home or are potentially life-threatening. These are given the highest priority.

2. **General Requests:** These include other maintenance requests such as, clogged sink, air conditioning not cooling properly, broken closet door etc. Please note that additional charges will apply if maintenance issues are resident caused.

<u>How to submit a Maintenance Service Request:</u>

➢ Call 1-855-400-4HBH (4424), option 2.  Provide your full name, phone number, home address, and detailed description of the problem, including everything that needs to be repaired to the HavenBrook Representative .

➢ If you are calling with an EMERGENCY REQUEST, please indicate this so your call can be routed appropriately.

➢ We also ask that you take pictures of the event for documentation. Once you're on the phone with the HavenBrook Representative, they will provide you with instructions on where to send the photos.



<u>IMPORTANT REMINDERS:</u>

• If you call and place an emergency request that does not fit the criteria of an emergency, you may be charged. Prior to calling, please remember that emergency requests are situations that threaten your ability to continue to occupy your home.

• We will address emergency work orders as quickly as possible.

• Resident(s) is responsible to report any maintenance issues in a timely manner to ensure that they are resolved quickly and as cost effectively as possible.

• Failure to report maintenance issues timely may result in resident charges.

• Issues that are resident caused will result in additional charges to the resident.

• **Trip charge of $75 will be billed to any resident who is a no-show after setting a maintenance service appointment.**

DocuSign Envelope ID: F3AC81A6-3280-416A-868C-AA5C99AE1E00
Case 18-16274-KJC    Doc 294-6    Filed 11/02/20    Entered 11/02/20 10:50:10    Desc Main
Document    Page 31 of 40



## Appliances
You are responsible for keeping all appliances:
- Clean and  making sure they are not damaged or used improperly.
- You may not remove the appliances we have provided in your home and you may not install your own appliances in place of those provided.
- You may not use the utility connections (electric or gas) provided for those appliances for any other purpose.
- You are responsible for any damage caused by improper use of appliances.
- Do not put aluminum foil under or around the burners (or cooking coils) of your cook top or any oven heating elements.

If you have any questions about what you may or may not do, please consult with your Property Manager.

## Cabinets & Countertops
- Painted cabinet or cupboard surfaces should be cleaned regularly, with a mild detergent or damp cloth.
- Fingerprints and other marks should be cleaned immediately.
- Please use only non-stick shelf liners.
- Please do not put hot pans directly on countertops.
- Clean spills before they dry and harden with a mild detergent, and do not use harsh or abrasive cleansers.

## Moisture Condensation:
Here are a few precautionary tips to follow:
- Open bathroom and kitchen windows as needed to allow ventilation.
- If available, use the ventilation fans in your home (kitchen & bathroom) when cooking or bathing.
- You should run the fans more often and longer if you have excessive moisture in either of these areas.
- During cold, damp weather, please keep your home warm enough to discourage moisture and wipe any moisture off of your windowsills if it builds up.
- During damp weather, the air conditioning or fan should be left running.

## Electric & Lighting
- The electric system is controlled by the electric service panel and the circuit breakers.
- Please know the location of your electric service panel and do not block access at any time. We will show you where it is, how the circuit breakers work, and how to shut off and restore electric service.
- Please remember to unplug any appliances before restoring power to its circuit.
- You should install replacement light bulbs. Do not use incandescent light bulbs greater than 60 watts. You are encouraged to use energy-efficient light bulbs whenever possible.
- Please keep light fixtures free of dirt, insects, and cobwebs. Most light fixtures can be cleaned with a lightly dampened cloth or sponge, but please remember to turn lights off before cleaning them.
- If a light fixture doesn't work, but the circuit breaker and the light bulb is in working condition, please call in a Maintenance Service Request and do not repair the fixture on your own.

If you experience any sparking or unusual noises in any HavenBrook supplied appliance, please call in an emergency Maintenance Service Request immediately.

## Fire Hazards & Fire Safety
- Keep matches out of reach of children.
- Keep clothing and other flammable materials away from any source of heat or flame.
- Unplug clothing irons or electric hair irons as soon as you're done using them.
- Keep your home clean and free of clutter and debris and take your trash out regularly.
- Remove any grease from the cooking range and dispose by placing in a proper container, then dispose in the trash can.
- Check electrical cords for damage and wear. Do not use any cord that is not in good condition. Use only approved extension cords and do not overload electric outlets.

DocuSign Envelope ID: F3AC8AA6-3280-416A-868C-AA5C99AFE000
Case 20-33948 Document Filed 11/02/20 Entered 11/02/20 10:50:10 Desc Main
Document Page 32 of 40



### Fireplaces

Fireplaces provide a cozy feel to your home even when not operable. Because we have found fireplaces to be dangerous they have been disabled. Your fireplace is not to be used at any time as the flue has been locked for your safety.

### Floors & Carpets

Please clean your floors and carpets regularly.

- Clean all spills immediately to avoid stains.
- You are responsible for any damage from improper care, burns, stains, pets, and children.
- Carpets should be routinely vacuumed (at least weekly) and vinyl floors should be swept daily and mopped with a mild detergent at least weekly. Only use products appropriate for the flooring type.
- Vacuum or sweep wood floors daily and clean spills immediately to avoid stains.
- You should never use excess water or inappropriate chemicals.

### Heating and Air Conditioning

Most homes have a thermostat that allows you to regulate the heating level.

- Conservation guidelines suggest setting it at 68°F during cold weather and 78°F in the summer.
- Furniture and other items should not touch heating vents or elements, and you must keep all items at least 12 inches from heating sources at all times.
- Heating vents and elements must be kept clean and free of dust.
- Routine changing of HVAC filters is the resident's responsibility.

### Keys & Lockouts

- You may not re-key your locks. Only HavenBrook may install, change, or re-key any lock to your home. If you lose the keys you were issued when you moved in, you will have to pay for replacement keys.
- If you would like to have your locks changed, you may only do so with the approval of your Property Manager and you will be responsible for the costs associated with the change. There is a minimum charge per lock (including two keys), plus expenses for each additional key.
- If you lock yourself out of your home, but do not require a new lock or new key(s), you have the following options:
    - Contact your Property Manager to schedule a work order for your locks to be rekeyed. (a fee will be charged)
    - If you choose to use a locksmith, you are responsible for all associated costs. The locksmith may ONLY let you into your home they may NOT change or re-key the lock.

### Laundry Appliances

Laundry appliances are not typically provided in HavenBrook homes; however, most homes do have washer and dryer connections.

- Residents are responsible to ensure proper installation of these appliances.
- Please check the washing machine and its connections regularly for leaks.
- Check and clean the dryer lint filter with each load, and ensure that the vent is working properly.
- At least monthly, check behind the washing machine for moisture and check behind the dryer for lint buildup and to make sure the vent hose is connected.

DocuSign Envelope ID: F2AC81A6-3280-416A-868C-AA5C99A7E000

## Pest Control

Keeping the interior and exterior of your home clean is the best way to prevent infestations of insects, rodents, or other pests. Thoroughly cleaning corners, cabinets and closets, around water pipes, kitchen and bathroom fixtures and under sinks will help keep the possibility of pests to a minimum. Always take out trash regularly, at minimum twice a week.

## Plumbing

- Your home has a shut-off valve that controls all the water into your home. You will be shown its location.
- Additionally, sinks, toilets, and the water heater each have their own shut-off valve. There are usually two: one for hot, and one for cold. To close a valve, turn it completely to the right (clockwise).
- You must report all leaks (including dripping faucets) as soon as they are discovered to ensure timely repair.
- If you damage your home due to, water stoppage, neglect, or improper use of water fixtures, or non-timely reporting of problems that lead to other home damage (e.g. dry rot), you may be responsible for the cost of the repairs.
- Please note: resident misuse will result in a large repair.

## Sewer System

The sewer system (toilets and drains) is to be used for water and appropriate waste only.

- Please do not put hair, paper towels, newspapers, sanitary napkins, tampons, diapers (including disposable), grease, cat litter, coffee grounds, cooking fats, wet-strength towels, facial tissues, cigarette butts, or any other foreign objects in the toilets or drains.
- Please clean your sinks regularly. It is recommended that you wipe them after each use.
- Please clean bathtubs, showers, toilets, and sinks on a weekly basis, using only appropriate cleaners. Regular cleaning will prevent stains and odors that can cause damage.

## Smoke Alarms

- Smoke alarms are tested for proper operation before you move in.
- You must test your smoke alarms on a regular basis (monthly) and you are responsible for replacing batteries.
- It is illegal to remove or tamper with any smoke alarm, including removing working batteries.
- If any smoke alarm does not work, call in a Maintenance Service Request immediately.

## Swimming Pools

HavenBrook Homes will be performing routine maintenance for the pool. You are responsible for:

- Securing the area and closing gates around the pool in accordance with local laws
- Reporting changes in water levels immediately.

Pools will be opened and closed at management's discretion on a seasonal basis.

## Walkways and Driveways:

- It is the resident's responsibilities to maintain all walkways and driveways clean of debris, snow or trash.
- Illegal parking is prohibited.

DocuSign Envelope ID: F3AC81A6-3280-416A-868C-AA5C99A1E000



**Walls**
Walls should be cleaned as soon as:
- Any dirt or marks appear, including smudges, fingerprints and pencil, ink, or crayon marks.
- Pay special attention to heavy-use areas, such as doors/window frames, light switches, and kitchen walls.
- All paint requests must be submitted to the property manager for review and approval. They will communicate the process details to you.
- Wallpaper is not allowed.
- All paint requests must be submitted to the property manager for approval, and they will communicate the process details to you.

**Waterbeds**
HavenBrook Homes does not allow waterbeds, and you will be responsible for any water or other damage caused by a waterbed that leaks or fails. Please refer to your lease for more restrictions.

**Water Heater**
If your water heater develops a leak, please do the following:

- Call in a Maintenance Service Request to 1-855-400-4HBH (4424) immediately.
- Turn off the electricity to the water heater at the power service panel.
- Turn off the water supply to the water heater (valve on top – if there are two, turn off both).

**Windows & Screens**
- Clean inside windows as needed and more frequently in heavy-use areas like the kitchen, living room, and bathrooms.
- We recommend cleaning heavy-use areas at least monthly. A toothbrush is a great way to clean the window tracks and you can vacuum window frames to remove embedded dirt when you're cleaning your home.
- Outside windows should be washed at least twice a year. As part of this process, screens (if provided) should be removed, washed with soap and water, and rinsed thoroughly.

**Yard Care**
- If your home includes an outdoor area that's part of your rental property, you are responsible for the maintenance and care of your yard. Please refer to your city code and HOA guidelines (if applicable) to ensure that your yard is in compliance with all requirements. You must mow your lawn regularly and not let it grow taller than six inches. All cost of services or fees associated with bringing your lawn into compliance or any associated municipality fines will be your responsibility.
- You will also need to water your lawn to keep it healthy; unless otherwise dictated by municipality restrictions. You also should always remove leaves and excessive lawn clippings. You must perform trimming of shrubs and bushes to maintain the appearance of your yard.
- Be aware of any fast-growing, invasive species located on your property, as they may require more frequent trimmings. If any trees, shrubs, or bushes become weakened due to weather or old age, please report it to your Property Manager.
- If it is in accordance with the policies of your neighborhood, you are allowed to install a garden with the prior, written permission of your Property Manager. You should neatly maintain your garden and you must restore the garden area to its original condition when you move out. Please make sure that your garden does not negatively impact your neighbors (because of smells, spraying, insects, lack of maintenance, etc.) and you must garden only in the area approved by your Property Manager.

THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 20-69233-jrs |
| JASON CHRISTIAN WHISENTON, | CHAPTER 7 |
|      Debtor. | JUDGE JAMES R. SACCA |
| HAVENBROOK HOMES, LLC, AS AGENT FOR FYR SFR BORROWER, <br>     Movant, <br><br>vs. <br><br>JASON CHRISTIAN WHISENTON, <br>     Debtor, <br><br>S. GREGORY HAYS <br>     Trustee, <br>     Respondents. | CONTESTED MATTER |

## **REQUEST FOR HEARING**

**PLEASE TAKE NOTICE** that HAVENBROOK HOMES, LLC, AS AGENT FOR FYR SFR BORROWER, LLC, Movant herein, has filed a Motion for Relief from Automatic Stay, dated November 2, 2020, and related papers with the Court seeking an order modifying the automatic stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the motion in **Courtroom 1404, Richard B. Russell Federal Building and U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, at 9:00 a.m. on November 17, 2020.** Given the current public health crisis, hearings may be telephonic only. Please check the "Important

Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone.

Your rights may be affected by the Court's ruling on these pleadings. You should read the pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you filed a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that the Clerk receives it at least two (2) business days before the hearing. The address of the Clerk's office is: **Clerk, United States Bankruptcy Court, Room 1340, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303.** You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion for Relief from Automatic Stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the motion and agrees to a hearing on the earliest possible date. If the Court cannot render a final decision within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period.

Dated: November 2, 2020.

Respectfully Submitted,

Morris, Manning & Martin, LLP
990 Hammond Drive, Suite 300
Atlanta, Georgia 30328
Telephone: (404) 255-6900
Facsimile: (404) 843-2317
lwilson@mmmlaw.com
ppark@mmmlaw.com

/s/ Lynn M. Wilson, Esq.
Lynn M. Wilson, Esq.
Georgia Bar No. 768852

/s/ Peter K. Park, Esq.
Peter K. Park, Esq.
Georgia Bar No. 419210
Counsel for Movant

THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 20-69233-jrs |
| JASON CHRISTIAN WHISENTON, | CHAPTER 7 |
| Debtor. | JUDGE JAMES R. SACCA |

| | |
|---|---|
| HAVENBROOK HOMES, LLC, AS AGENT FOR FYR SFR BORROWER, LLC, <br>     Movant, <br><br> vs. <br><br> JASON CHRISTIAN WHISENTON, <br>     Debtor, <br><br> S. GREGORY HAYS, <br>     Trustee, <br>     Respondents. | CONTESTED MATTER |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served a copy of Movant's **MOTION FOR RELIEF FROM AUTOMATIC STAY** and **REQUEST FOR HEARING** electronically or by depositing same in the United States First Mail in a properly addressed envelope to each with adequate postage thereon as follows:

JASON CHRISTIAN WHISENTON
1218 Campbellton Road SW, #B
Atlanta, Georgia 30310


S. GREGORY HAYS, Trustee
Hays Financial Consulting, LLC
2964 Peachtree Road, Suite 555
Atlanta, Georgia 30305

STANLEY J. KAKOL, Jr.
The Law Office of Stanley J. Kakol, Jr
5353 Fairington Road, Suite C
Lithonia, Georgia 30038


Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303


Dated: November 2, 2020


Morris, Manning & Martin, LLP
990 Hammond Drive, Suite 300
Atlanta, Georgia 30328
Telephone: (404) 255-6900
Facsimile: (404) 843-2317
lwilson@mmmlaw.com
ppark@mmmlaw.com

/s/ Lynn M. Wilson, Esq.            
Lynn M. Wilson, Esq.
Georgia Bar No. 768852

/s/ Peter K. Park, Esq.             
Peter K. Park, Esq.
Georgia Bar No. 419210
Counsel for Movant

## DISTRIBUTION LIST

### *Debtor*

JASON CHRISTIAN WHISENTON
1218 Campbellton Road SW, #B
Atlanta, Georgia 30310

### *Debtor's Representative*

STANLEY J. KAKOL, Jr.
The Law Office of Stanley J. Kakol, Jr
5353 Fairington Road, Suite C
Lithonia, Georgia 30038

### *Trustee*

S. GREGORY HAYS, Trustee
Hays Financial Consulting, LLC
2964 Peachtree Road, Suite 555
Atlanta, Georgia 30305

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

### *Movant's Representatives*

LYNN M. WILSON, ESQ.
PETER K. PARK, ESQ.
Morris, Manning & Martin, LLP
990 Hammond Drive, Suite 300
Atlanta, Georgia 30328